UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~
In re
**LILLIAN M. O'NEAL,**                                                Chapter 13
    Debtor                                                           Case No. 10-22931-JNF
~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

    The matter before the Court is the "Motion to Dismiss Chapter 13 Case" filed by Edward A. Morgan ("Morgan"), the brother of Lillian O'Neal (the "Debtor"). As grounds for his Motion, Morgan alleges that the Debtor 1) omitted reference to her prior Chapter 13 case, Case No. 07-13554-JNF, on her petition; and 2) commenced the present Chapter 13 case in bad faith and to avoid the jurisdiction of the Suffolk County Probate and Family Court, Department of the Trial Court (the "Probate Court"). Additionally, Morgan contends that the Debtor's bankruptcy case is a two-party dispute, one that has been ongoing for many years in the Probate Court.

    The Debtor opposes Morgan's Motion. The Court conducted a hearing on the Motion to Dismiss on March 10, 2011 and took the matter under advisement. At the hearing, counsel for Morgan represented that, in addition to the matters set forth in his Motion, his client holds an equitable lien affecting the Debtor's interest in a Thrift Savings Plan, a position vigorously disputed by counsel to the Debtor. Neither party, however,

1

requested an evidentiary hearing.

The Court finds that the material facts necessary to decide the Motion to Dismiss are not in dispute and that an evidentiary hearing is unnecessary to resolve the issues raised by Morgan's Motion. Accordingly, the Court makes its findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

## II. BACKGROUND

A. The Debtor's 2007 Chapter 13 Case

The Court takes judicial notice that the Debtor filed a Chapter 13 petition on June 6, 2007. *See* In re Hyde, 334 B.R. 506, 508 n. 2 (Bankr. D. Mass. 2005).[1] In the prior case, the

---

[1] In Hyde, this Court, quoting In re Nail, 195 B.R. 922, 924 (Bankr. N.D. Ala. 1996), observed:

> The Court may take judicial notice of the documents in the debtors' file. Freshman v. Atkins, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925) (court may take judicial notice of and give effect to its own records in another, but interrelated, proceeding, so that district court could take judicial notice of pendency of application for discharge in prior bankruptcy proceedings and thereby preclude discharge in a second voluntary proceeding in respect to the same debts as listed in first proceeding); Cash Inn of Dade, Inc. v. Metropolitan Dade County, 938 F.2d 1239 (11th Cir.1991) (district court may take judicial notice of public records within its files relating to particular case before it or to other related cases); ITT Rayonier, Inc. v. U.S., 651 F.2d 343 (5th Cir.1981) (court may take judicial notice of its own records or of those of inferior courts); Kinnett Dairies, Inc. v. Farrow, 580 F.2d 1260 (5th Cir.1978) (trial court did not err in taking judicial notice of materials in court's own files from prior proceedings); State of Fla. Bd. of Trustees of Internal Imp. Trust Fund v. Charley Toppino & Sons, Inc., 514 F.2d 700 (5th Cir.1975) (it is not error for a district court to take judicial notice of related proceedings and records in cases before that court); Aloe Creme Lab., Inc. v. Francine Co., 425 F.2d 1295 (5th Cir.1978[1970]) (where it was contended on motion for summary judgment that issues had theretofore been decided adversely to plaintiff

Debtor filed "Debtor's Motion to Dismiss Her Chapter 13 Case" on May 12, 2008. In her Motion to Dismiss, the Debtor indicated that her proposed Chapter 13 plan had not been confirmed and that since commencing her case, she "has had numerous obstacles," including aggressive pursuit by a creditor and that she intended "to go back to Probate

---

> by reason of a judgment entered in another case brought by same plaintiff, district court had right to take notice of its own files and records, and had no duty to "grind the same corn a second time."); Soley v. Star & Herald Co., 390 F.2d 364 (5th Cir.1968) (judicial notice of a court's prior cases is permitted to support grant of a motion for summary judgment); Ackermann v. United States, 178 F.2d 983 (5th Cir.1949) (in motion to set aside judgment, court could take judicial notice of its own records in related litigation). *See also*, Job v. Calder (In re Calder), 907 F.2d 953 (10th Cir.1990) (bankruptcy court properly took judicial notice of contents of debtor's Statement of Affairs and Schedule B–1 when denial of discharge was sought for making of false oath or account in or in connection with bankruptcy case); Wilson v. Huffman ( In re Missionary Baptist Found. of Am., Inc.), 712 F.2d 206 (5th Cir.1983) (a court may take judicial notice of the record in prior related proceedings and draw reasonable inferences therefrom); Mann v. Shepard (In re Gervich), 570 F.2d 247 (8th Cir.1978) (bankruptcy court properly took judicial notice of bankrupt's verified schedule of creditors revealing that he was indebted at time agreement transferring property to him and his wife was entered into and that at least some of those debts were still owed at time petition in bankruptcy was filed); IIT v. Lam (In re Colorado Corp.), 531 F.2d 463 (10th Cir.1976) (bankruptcy judge properly took judicial notice of files of court relating to the controversy as to whether claims of foreign creditors could be allowed for purposes of voting for trustee in bankruptcy); Woodmar Realty Co. v. McLean (In re Woodmar Realty Co.), 294 F.2d 785 (7th Cir.1961), *cert. denied*, 369 U.S. 803, 82 S.Ct. 643, 7 L.Ed.2d 550 (1962) (bankruptcy court was duty bound to take judicial notice of its records and files in cause, and it was duty of reviewing court to take notice of facts which had come to its knowledge through records presented to it on several appeals in same case).

In re Hyde, 334 B.R. at 508 n.2.

3

Court and have that Court determine whether or not the creditor in question has a claim against her." That creditor was J. Douglas LiBassi ("LiBassi"), who acted as counsel to Morgan in the Probate Court. In her Motion to Dismiss, which the Court granted, the Debtor also indicated that she had nominal debt other than the claims asserted by LiBassi and Morgan.

In the Debtor's 2007 bankruptcy, LiBassi filed a Motion for Relief from Automatic Stay imposed by 11 U.S.C. § 362(a), seeking to continue a contempt proceeding against the Debtor pending in the Probate Court. The Debtor opposed the Motion. On November 27, 2007, this Court issued a Memorandum and Order denying LiBassi's Motion for Relief from Automatic Stay. See In re O'Neal, No. 07-13554-JNF, 2007 WL 4224326 (Bankr. D. Mass Nov. 27, 2007). In its decision, the Court recounted the convoluted proceedings in the Probate Court, proceedings rendered more complex by LiBassi's disbarment from the practice of law. In its November 12, 2007 decision, this Court stated:

> For purposes of the Debtor's Chapter 13 bankruptcy case, the Probate Court granted judgment to Edward [Morgan], as plaintiff-in-counterclaim, against the Debtor in the sum of $32,630 for "lost rent and rent needlessly incurred by the plaintiff-in-counterclaim." Additionally, it enjoined the Debtor "from withdrawing, transferring, encumbering or otherwise depleting the assets contained in her Thrift Savings Plan established through the United States Postal Service, until such time as all sums owed to the plaintiff-in-counterclaim under this judgment have been paid in full." Id. at 4 [O'Neal v. Morgan, No. 99E 0035, Slip Op. at 4 (July 31 2007)].
>
> The Probate Court, as a further component of its judgment, provided a mechanism for determination and payment of attorney's fees incurred by Edward who was represented by LiBassi. The Probate Court authorized LiBassi to submit an "itemized affidavit" of his time on or before February 4, 2002 and scheduled a hearing for February 12, 2002 in the event he failed

4

to do so.

LiBassi was temporarily suspended from the practice of law on February 27, 2002, approximately one month after the Probate Court issued its judgment. The Debtor opposed the award of attorney's fees to LiBassi because he had been charged with using funds, which were to be held for the parties in escrow, for his own purpose. In a May 13, 2002 Memorandum of Decision, the Probate Court rejected the Debtor's position, stating "'[i]f it should turn out that Mr. LiBassi did what is alleged, that would not be a reason for [Lillian] to be excused from paying [Edward's] reasonable fees and costs. The funds paid by [Lillian] for [Edward]'s reasonable fees and costs will be available to reimburse the escrowed funds if necessary.'" Id. at 4. The Probate Court ordered the Debtor to pay Edward the sum of $37,676.25 for attorney's fees plus $1,504.66 for costs. It directed that payments be first applied to the $15,000 trust fund established pursuant to the January 22, 2002 judgment and then to the separate bank account to bring both repositories up where they would have been if the accounts had been diminished only by authorized disbursements. The Probate Court directed that any additional payments made by the Debtor were to be applied to the money judgment in favor of Edward in the sum of $32,630 with the balance, if any, to be held by Edward's new attorney, James E. Small, "pending completion of proceedings now pending regarding J. Douglas LiBassi and the further order of the court." Id. at 5. The Probate Court ordered the Debtor to make payments on or before June 7, 2002.

Over five years later, the Probate Court, in its July 31, 2007 decision, observed that LiBassi was disbarred by a judgment of the Supreme Judicial Court on July 12, 2006 "in part because he used funds of the parties he was holding in escrow in this case for his own purposes." It also observed that the Debtor had paid nothing toward the judgment or attorney's fees. Id.

2007 WL 4224326, at *2.

B. <u>The Debtor's 2010 Chapter 13 Case</u>

The Debtor filed her second Chapter 13 petition on November 30, 2010. She failed to disclose her prior Chapter 13 case on her petition, as required, although, on February 15, 2011, she amended her petition to set forth her prior bankruptcy case.

5

The Debtor filed her Schedules, Statement of Financial Affairs and Chapter 13 plan with her petition. On Schedule B-Personal Property, she listed significant assets, including funds in the sum of $19,655.49 held in the IOLTA account of Naomi Shelton, Esq., which funds according to the Debtor were "a loan distribution from the debtor's Thrift Savings Plan account ordered by Suffolk County Probate and Family Court, Justice Jeremy Stahlin." The Debtor also disclosed a U.S. Postal Service Federal Employee Retirement System Account, which she stated could not be valued, liquidated or closed prior to retirement and which would pay a monthly benefit on retirement, and a Thrift Savings Plan account with a value of $85,673.14. The Debtor claimed both retirement accounts as exempt on Schedule C-Property Claimed As Exempt. She indicated that the Retirement System Account was fully exempt pursuant to 5 U.S.C. §§ 8401-8479 and that the Thrift Savings Plan Account as fully exempt pursuant to 5 U.S.C. §§ 8351 and 8437(e). The Debtor claimed the federal exemptions and also claimed the two retirement accounts as exempt pursuant to 11 U.S.C. § 522(d)(10)(E). The Debtor also claimed the funds held by Attorney Shelton as exempt pursuant to 11 U.S.C. § 522(d)(5). The Court notes that there have been no timely filed objections to the Debtor's claimed exemptions. *See* Fed. R. Bankr. P. 4003(b).

With respect to her liabilities, the Debtor listed no secured or priority creditors on Schedules D-Creditors Holding Secured Claims and E-Creditors Holding Unsecured Priority Claims, respectively. The Debtor listed Morgan and LiBassi as unliquidated, disputed creditors on Schedule F-Creditors Holding Unsecured Nonpriority Claims. She listed Morgan's claim in an unknown amount, LiBassi's claim in the amount of $79,061.42,

as well as the claims of creditors with deficiency claims, totaling $124,598, arising from mortgage foreclosures on property located at 9 Dietz Road, Hyde Park, Massachusetts and 60 Leighton Road, Hyde Park, Massachusetts.

The Debtor proposed a 60-month Chapter 13 plan with a $700 monthly plan payment. Through her plan she proposed to pay general unsecured creditors, whose claims totaled $216,417.65, a dividend of 16.08%.

The bar date for filing proofs of claim was April 12, 2011. The Court takes judicial notice that five creditors filed proofs of claim as follows:

| Creditor | Amount of Claim | Claimed Status |
| --- | --- | --- |
| Discover Bank | $3,460.51 | unsecured |
| LiBassi | $79,061.72 | Mass. Gen. Law ch. 221, § 50 |
| Morgan | $77,588.00 | secured by equitable lien |
| City of Boston | $5,166.72 | unsecured |
| Naomi L. Shelton, Esq. | $7,030.00 | unsecured |

The Court notes that the Debtor has filed objections to the proofs of claim filed by Morgan and LiBassi, challenging the alleged secured status of their claims. The Debtor provided the requisite notice in her objections that the claimants had thirty days from the filing of the objection to file a response. *See* MLBR Standing Order 10-1, MLBR 3007-1 and Chapter 13 Rule 13-13. LiBassi filed a response; Morgan did not. The amount and secured status of the proofs of claim filed by Morgan and LiBassi are not currently before the Court.

**III. DISCUSSION**

    A. Applicable Law

7

Section 1307 of the Bankruptcy Code provides that on request of a party in interest or the United States trustee, and after notice and a hearing, the court may convert a Chapter 13 case to a case under Chapter 7 or dismiss a case under Chapter 13 for cause, whichever is in the best interests of creditors. 11 U.S.C. § 1307(c). "Cause" is not defined but includes the following:

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under chapter 123 of title 28;

(3) failure to file a plan timely under section 1321 of this title;

(4) failure to commence making timely payments under section 1326 of this title;

(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) material default by the debtor with respect to a term of a confirmed plan;

(7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;

(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;

(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a);

(10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521(a); or

(11) failure of the debtor to pay any domestic support obligation that first

8

becomes payable after the date of the filing of the petition.

11 U.S.C. § 1307(c)(1)-(11).  Lack of good faith, or bad faith, is not specifically listed as a ground for dismissal, although the Court must find that the plan has been proposed in good faith and that the action of the debtor in filing the petition was in good faith to confirm a Chapter 13 plan.  *See* 11 U.S.C. § 1129(a)(3) and (7).  Nevertheless, the United States Supreme Court has recognized that bad faith may constitute cause for dismissal or conversion.  *See* Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 379 (2007). Additionally, the United States Bankruptcy Appellate Panel for the First Circuit has observed "it is well established that lack of good faith (or bad faith) is 'cause' for dismissal or conversion of a Chapter 13 case under § 1307(c)." Sullivan v. Solimini (In re Sullivan), 326 B.R. 204, 211 (B.A.P. 1st Cir. 2005)  (citing In re Cabral, 285 B.R. 563, 573 B.A.P. 1st Cir. 2002); Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir. 1999); Ho v. Dowell (In re Ho), 274 B.R. 867, 877 (B.A.P. 9th Cir. 2002); In re Dicey, 312 B.R. 456, 458 (Bankr. D. N.H. 2004); In re Fleury, 294 B.R. 1,  5 (Bankr. D. Mass. 2003); and In re Virden, 279 B.R. 401, 407 (Bankr. D. Mass. 2002)).  According to the panel in Sullivan,

> Courts differ in their approach to determining a debtor's good faith, but the majority favor a totality of the circumstances test to determine whether a debtor lacked good faith in filing a Chapter 13 petition for purposes of § 1307(c).The United States Bankruptcy Appellate Panel for the First Circuit originally did not adopt a totality of the circumstances approach to determine lack of good faith, but instead advocated an examination of only the circumstances relevant to the debtor's proposed plan and post-filing conduct. *See* In re Keach, 243 B.R. 851, 856 (1st Cir. BAP 2000). However, in the five years since the Panel's decision in Keach, the bankruptcy courts in this circuit have expanded Keach's examination of the debtor's lack of good faith to include both pre-petition and post-petition conduct of the debtor. *See*

9

>   Dicey, 312 B.R. 456; Fleury, 294 B.R. 1; In re Scotten, 281 B.R. 147, 149 (Bankr. D. Mass. 2002); and Virden, 279 B.R. 401. The Panel then implicitly adopted the totality of the circumstances test to determine lack of good faith by affirming a bankruptcy court's decision granting a Chapter 7 trustee's motion to reconvert a Chapter 13 to Chapter 7, for cause, based on the totality of circumstances test. *See* Cabral, 285 B.R. at 573–74. Thus, the majority of the bankruptcy judges in this circuit have followed the totality of the circumstances approach.
>
>   ***
>
>   In applying the totality of the circumstances test to determine whether a Chapter 13 petition has been filed in bad faith, bankruptcy courts generally consider the following factors: (1) debtor's accuracy in stating her debts and expenses, (2) debtor's honesty in the bankruptcy process, including whether she has attempted to mislead the court and whether she has made any misrepresentations, (3) whether the Bankruptcy Code is being unfairly manipulated, (4) the type of debt sought to be discharged, (5) whether the debt would be dischargeable in a Chapter 7, and (6) debtor's motivation and sincerity in seeking Chapter 13 relief. Cabral, 285 B.R. at 573; Dicey, 312 B.R. at 459; Virden, 279 B.R. at 408. A finding of bad faith does not require fraudulent intent by the debtor. *See* Fleury, 294 B.R. at 6. . . .
>
>   The factors enumerated in Cabral, Dicey and Virden do not specifically include two of the factors considered by the bankruptcy court in Fleury, and adopted by the bankruptcy court in this case, namely the debtor's history of filings and dismissals and whether the debtor only intended to defeat state court litigation. However, these two factors would certainly be considered in determining whether a debtor is unfairly manipulating the Bankruptcy Code and in considering the debtor's motivation and sincerity in seeking Chapter 13 relief. The hallmark of the totality of the circumstances test is that the factors to be considered may vary in each case. "The bottom line is whether the debtor is attempting to thwart his creditors, or is making an honest effort to repay them to the best of his ability." Virden, 279 B.R. at 409.

In re Sullivan, 326 B.R. at 211-12 (footnote omitted).

The moving party under 11 U.S.C. § 1307(c) bears the burden of proof. In re Bailey, 09-2564, 2010 WL 3277908, at *4 (Bankr. N.D. W. Va. 2010 Aug. 13, 2010).

10

B. <u>Analysis</u>

The Court finds that Morgan has failed to satisfy his burden that the Debtor's case should be dismissed for bad faith or because it represents another chapter in a tri-party dispute that has been pending in the Probate Court. In the first place, none of the specified grounds for dismissal in section 1307(c) are present in this case. Moreover, the failure to list the prior Chapter 13 case, while significant, was rectified through an amendment to the petition.

An assessment of the Debtor's Schedules and Chapter 13 plan compels the conclusion that her Chapter 13 case was not filed in bad faith. The Debtor had substantial unsecured debt arising from deficiency claims of mortgagees, as well as credit card debt. Accordingly, Morgan's assertion that the Debtor's case was a forum shopping ploy to evade the rulings of the Probate Court is simplistic in view of the Debtor's need to address sizable unsecured claims of creditors other than Morgan and LiBassi. Although the Debtor appears to have inadvertently failed to disclose her prior Chapter 13 case, Morgan did not point to any circumstances that would suggest that the Debtor was attempting to mislead this Court or creditors or that she was unfairly manipulating the Bankruptcy Code.

Additionally, Morgan did not assert that his debt, or for that matter the debt owed to LiBassi, is nondischargeable. Although Morgan argued that he holds an equitable lien and LiBassi has asserted a statutory lien that encumbers the Debtor's property, the validity of the liens is not before the Court for determination at this time. Neither Morgan nor LiBassi has advanced any argument that the Debtor's obligations to them would be

11

nondischargeable under 11 U.S.C. § 1328(a) or 11 U.S.C. § 523(a).

Morgan did not argue, and there is nothing in the record to suggest, that the Debtor filed her instant bankruptcy case with fraudulent intent. While this Court cannot ignore the pendency of the state court litigation and the Debtor's prior bankruptcy filing, the Court cannot conclude that the Debtor filed her bankruptcy petition with an improper purpose. She has proposed a plan pursuant to which she will pay unsecured creditors $700 per month for 60 months. Because not all unsecured creditors filed proofs of claim, the dividend to unsecured creditors will be significantly higher than that set forth in her Chapter 13 plan. Moreover, the Debtor's Chapter 13 case provides an appropriate vehicle for determining whether her retirement accounts are exempt from property of the estate, whether the retirement accounts are encumbered by judicial or statutory liens held by Morgan and LiBassi, respectively, and whether those liens can be avoided if, and to the extent that, they impair exemptions to which the Debtor is entitled.

## IV. CONCLUSION

In view of the foregoing, the Court shall enter an order denying Morgan's Motion to Dismiss.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
Dated: May 23, 2011                           United States Bankruptcy Judge

12