UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~

In re
**LILLIAN M. O'NEAL,**                                    Chapter 7
   Debtor                                          Case No. 10-22931-JNF

~~~~~~~~~~~~~~~~~~~~~~~~

# MEMORANDUM

## I. INTRODUCTION

The matters before the Court are 1) the Objection to Claimed Exemptions filed by J. Douglas LiBassi ("LiBassi"), pursuant to which LiBassi objects to the exemptions claimed by Lillian O'Neal (the "Debtor") in a U.S. Postal Service Federal Employees Retirement System Account (the "FERS Account"), and a United States Postal Service Thrift Savings Plan account (the "TSP Account"); 2) the Debtor's Response to LiBassi's Objection; 3) LiBassi's Motion to Enforce Order of June 20, 2011 and Restore Escrow Funds; and 4) the First Amended Accounting of TSP Funds Held in Escrow at Rockland Trust Company filed by counsel to the Debtor. The Court heard the matters on October 6, 2011 and directed the parties to file an Agreed Statement of Facts and Memoranda of law by October 31, 2011. The Court determined that if the parties could not agree as to all the relevant facts, they should report that circumstance to the Court and the Court would then schedule an evidentiary hearing.

The parties filed an Agreed Statement of Facts and Request for Evidentiary Hearing

1

on Disputed Facts. In their Statement, however, they did not specify the evidentiary issues that were unresolved. Both parties filed briefs.

The issues presented include whether the Debtor properly claimed exemptions in her TSP Account and in sums which the Debtor borrowed from her TSP Account and which were held in an escrow account at the commencement of the case pursuant to an order of the Massachusetts Probate and Family Court, Department of the Trial Court.

## II. AGREED FACTS

The parties agreed to the following facts which are set forth in 25 numbered paragraphs with references to 19 exhibits. The Court has paraphrased the agreed facts and, where appropriate, has included language from the agreed exhibits.

On June 8, 1999, the Debtor filed an Equity Complaint in the Suffolk County Probate and Family Court (the "Probate Court"), Docket No. 99 E 0035, seeking rescission of a deed from her parents to her brother, Edward Morgan, who was represented by LiBassi. LiBassi filed counterclaims against the Debtor on Morgan's behalf.

On January 22, 2002, the Probate Court entered a judgment dismissing the Equity Complaint and awarding monies to Morgan on his counterclaims for lost rent, for rent needlessly incurred, and for attorney's fees and costs. Specifically, the Probate Court entered a judgment against the Debtor in the sum of $32,630, plus attorney's fees, and enjoined her from withdrawing, transferring, encumbering or otherwise depleting assets contained in her TSP Account established through the United States Postal Service, until such time as all sums owed to Morgan were paid in full (the "Judgment").

On May 13, 2002, the Probate Court entered a Memorandum of Decision on the issue of the reasonableness of attorney's fees. It determined that LiBassi was entitled to $37,676.25 in fees. On May 13, 2002, the Probate Court entered an order in which it calculated the amount of attorney's fees at $37,676.25 and costs at $1,504.66 for a total to be paid by the Debtor to LiBassi of $39,180.91 by June 7, 2002.

The Debtor did not make any payments pursuant to the Judgment dated January 22, 2002, and LiBassi, on or around September 28, 2006, filed a Complaint for Contempt in the Probate Court.

On July 16, 2009, the Probate Court entered a Judgment on his Complaint for Contempt, finding the Debtor "GUILTY of contempt of this court for having willfully . . . [n]eglected and refused to pay $37,676.25 on account of attorney fees and $ 1,504.66 on account of legal costs on or before June 7, 2002 . . . ." (capitalization in original). The Probate Court calculated interest on the arrears at $33,414.34 and imposed a 30-day jail sentence which it suspended (the "Contempt Judgment"). The matter was continued for review until August 3, 2009. The Probate Court indicated that the balance of the $39,180.91, plus interest to the day of payment, was to be paid to LiBassi on or before January 29, 2010.

On August 3, 2009, Judge Stahlin entered a further order on the contempt complaint. His order set forth, among other things, the following:

> Provided a notice of appeal is filed and docketed in this court on or before August 7, 2009, the defendant may, instead of paying the purge amount to the plaintiff, pay $60,000 to attorney Naomi Shelton [the Debtor's Probate Court attorney] who shall hold *the amount in escrow in an interest bearing account pending the further order of the Court.*

3

> The defendant may borrow or otherwise withdraw from her thrift savings plan established through the United States Postal Service, a sum of up to $60,000.00 provided that the total of the amount borrowed or withdrawn is paid to either the plaintiff LiBassi outright or to attorney Naomi Shelton as escrow agent.
>
> The defendant shall, no later than August 6, 2009, submit to one or more financial or other institutions the paperwork necessary to borrow and/or withdraw sums totaling $60,000.00
>
> If the defendant pays funds to attorney Shelton *for attorney Shelton to hold as escrow agent*, then attorney Shelton shall mail to the plaintiff a copy of each monthly statement for the escrow account.

(emphasis supplied). According to Attorney Shelton, in a letter to Debtor's bankruptcy counsel, dated October 2011, "[t]he purpose of the funds was two-fold. First, they were a purge of the contempt in exchange for further suspension of the 30-day sentence. Second, they were to act as an appeal bond as there is a Notice of Appeal pending with the Court." The parties agreed that the funds would go to the party that was successful on appeal and that the appeal is still pending and the Probate Court action is currently stayed with a review date on February 6, 2012.

In response to the Court order of August 3, 2009, which the Debtor submitted to the TSP Legal Processing Unit, that Unit refused to honor the Probate Court order, explaining that "[t[o be honored by the TSP, a court order must qualify under 5 U.S.C. §§ 8435(c), and 5 C.F.R. part 1653, subpart A" and that the Probate Court order did not require a payment to a permissible payee, namely current or former spouses of a TSP participant or dependents of a participant.

4

On September 1, 2009, the Probate Court entered a further order on the complaint for contempt. It ordered that the Debtor, instead of paying the purge amount to LiBassi could, on or before September 10, 2009 at 2:00 p.m., pay $60,000 to the First Justice of the Probate Court to hold in an interest bearing escrow account, pending further order of the court; borrow the maximum amount permitted from her TSP Account and pay that amount to the First Justice to hold in an interest bearing escrow account; or file an acceptable bond in an amount of not less than $73,200. The Probate Court enjoined the Debtor from withdrawing any sums from her TSP Account except under those limited circumstances.

On September 10, 2009 the Court entered a further order on the contempt complaint. It suspended the sentence in the Contempt Judgment dated July 16, 2009 until September 29, 2009. On September 28, 2009, the Massachusetts Appeals Court granted the Debtor's motion for a stay.[1]

On January 8, 2010, pursuant to the Appeals Court's Order, the Probate Court issued detailed Findings of Fact on the Complaint for Contempt dated September 28, 2006. In its Findings of Fact, it determined that the Debtor failed to file a timely appeal from its May 13, 2002 order; that on September 5, 2002, the Debtor withdrew from her Thrift Savings Plan the sum of $49,300; that "Ms. O'Neal testified at trial that she thought she gave the

---

[1] The stay was conditioned upon the Debtor submitting the supplemental affidavit filed with the Appeals Court to the Probate Court, which was directed to evaluate the contempt matter pursuant to In re Birchall, 454 Mass. 837 (2009) and make appropriate findings.

5

loan proceeds to her daughter;" that the Debtor was repaying the loan from her TSP Account in the amount of $179.80 bi-weekly; that as of April 20, 2007, the Debtor had reduced the outstanding balance on her TSP Account loan to $37,655.68; that as of June 30, 2007 the balance of the Debtor's TSP Account was $116,983.91; and that as of July 14, 2009 the balance was between $50,000 and $60,000. The Probate Court, after reviewing its orders of July 16, 2009, September 1, 2009, and September 10, 2009, concluded that LiBassi had "proven by clear and convincing evidence that there is a clear and unequivocal command for Ms. O'Neal to pay the legal fees and costs, with interest;" "that there is a clear and undoubted ongoing disobedience by Ms. O'Neal of the clear and unequivocal command;" and that "Ms. O'Neal has the ability to pay at least the maximum amount she can borrow from her thrift savings plan . . . ."

On February 8, 2010, the Massachusetts Appeals Court entered the following order:

After review of the trial court judge's findings of fact dated January 8, 2010, and of the parties' submissions to the single justice, it is ordered that all relief requested by the defendant, Lillian O'Neal, is denied. The single justice's order, dated September 28, 2009, insofar as it granted a temporary stay, is vacated.

On May 4, 2010 the Probate Court ordered the Debtor to submit a TSP loan application, in a form approved by LiBassi, in the amount of $50,000.00 before May 18, 2010 and that "[a] copy of any letter, statement or other communication hereafter received by the defendant or her counsel from the defendant's thrift savings plan, or hereafter sent to the defendant's thrift savings plan by the defendant or her counsel shall be forthwith mailed or delivered to the plaintiff." The matter was scheduled for further compliance

6

review on June 9, 2010 at 3:00 pm.

On November 9, 2010, the parties appeared in the Probate Court for a status report on the TSP Account loan, at which the Debtor reported that, as yet, the proceeds had not been received. The Probate Court continued the matter to November 17, 2010 at 9:00 am. The Probate Court ordered the Debtor to deliver to the Court a bank check or a certified check in the amount of $60,000 payable to the First Justice or deliver to the Court loan proceeds from the TSP account for the full amount of the loan approved by letter dated September 24, 2010, endorsed to the First Justice.

On November 17, 2011, the parties appeared in the Probate Court for a status report on the anticipated receipt of the loan proceeds. At the hearing, Attorney Shelton reported to Judge Stahlin that she had not yet received any funds. Judge Stahlin ordered the following:

> A. Counsel for the defendant [O'Neal] shall notify the plaintiff as soon as the loan proceeds for defendant are transferred to her client funds account.
>
> B. *Counsel for the defendant shall not disburse any funds received for the defendant until further order of the Court except as provided in paragraph I. C. 3 below.*
>
> C. Further hearing is scheduled for December 1, 2010 at 9:00 am, at which time O'Neal shall be present and shall either:
>
>> 1. Deliver to the Court a bank or certified check in the amount of $60,000.00 payable to the First Justice of this Court;
>>
>> 2. Deliver to the Court a loan proceeds check from her TSP for the full amount of the loan

>approved by the letter dated September 24, 2010, endorsed to the First Justice of this Court; or
>
>3. Deliver to this court a client funds check of attorney Naomi Shelton, payable to the First Justice of this Court, for the full amount of the loan approved by the letter dated September 24, 2010, from O'Neal's TSP. See Order, dated November 17, 2010, a true, accurate and correct copy is attached hereto as Document No 14.

(emphasis supplied).

The Debtor and LiBassi agreed that they understood that once received by the Probate Court the funds would be held by the Probate Court in escrow in an interest bearing account pending further order or a decision with respect to O'Neal's appeal from the Contempt Judgment.

On November 30, 2010, the Debtor filed a Chapter 13 petition.[2] The Debtor represents in her Memorandum that Attorney Shelton appeared in the Probate Court on December 1, 2010 and informed Judge Stahlin about the Debtor's bankruptcy filing. According to the Debtor "Judge Stahlin did not request the turnover of the funds into his possession, did not establish an escrow account and did not take any further action but to

---

[2] The Court takes judicial notice that the Debtor filed a previous bankruptcy case on June 6, 2007 (Case No. 07-13554). That case was commenced as a Chapter 13 case. On November 27, 2007, this Court issued a Memorandum and Order denying LiBassi relief from the automatic stay. The Debtor moved to dismiss her Chapter 13 case on May 12, 2008 prior to confirmation of a Chapter 13 plan. In her Motion to Dismiss, she admitted that her case "was filed to stop a contempt action. . ." and that she "intended to go back to the Probate Court for it to "determine whether or not the creditor in question has a claim against her." adding that "[t]he Probate Court has dealt with this case for nine years." On May 27, 2008, her first Chapter 13 case was closed.

stay the Probate Court matter pending the outcome of the bankruptcy case." Notably, he did not vacate his order of November 17, 2010.

On Schedule B-Personal Property, at paragraph 2, she listed as an asset the sum of $19,655.49 under checking, savings or other financial accounts, employing the following description: "Funds being *held in escrow* in the IOLTA account of Attorney Naomi L. Shelton, Esq. These funds are a loan distribution from the debtor's Thrift Savings Plan account ordered by Suffolk County Probate & Family Court, Justice Jeremy Stahlin (emphasis supplied)." On Schedule C-Property Claimed as Exempt, the Debtor claimed an exemption in the sum of $11,818.04 with respect to the funds held by Attorney Shelton, utilizing her "wildcard" exemption pursuant to 11 U.S.C. §522(d)(5). The Debtor also claimed her FERS Account as fully exempt in an unknown amount pursuant to 11 U.S.C. § 522(d)(10)(E), as well as 100% of her TSP Account, which she valued at $87,809.30.

On or about December 10, 2010, Attorney Shelton transferred the funds she was holding in her IOLTA account to the Debtor's bankruptcy attorney, William Scannell, Esq., without the authority of the Probate Court pursuant to its November 17, 2010 order or this Court where the Debtor's Chapter 13 case was pending. Those funds, according to the parties, were initially deposited into Attorney Scannell's IOLTA account and later deposited by him into an interest bearing escrow account at Rockland Trust Company "for the sole benefit of Lillian O'Neal" with William E. Scannell named as escrow agent. The parties agreed that "[t]he Debtor's counsel agreed to hold these funds for the Debtor as she needed same to make her Ch. 13 Plan payments and because she was anticipating

9

significant post-petition state and federal income taxes to be due for FY 2010 when she filed in 2011 [sic] due to her TSP loan(s)."

On May 31, 2011, before the Debtor converted her Chapter 13 case to a case under Chapter 7, LiBassi filed a Motion to Order Debtor to Deposit "Escrow Funds" with Trustee. The Debtor did not file an opposition to the motion, and this Court granted the motion on June 20, 2011. The Court's endorsement order provided: "No objections. Motion allowed. The Debtor shall file by 06/30/11 an accounting of her postpetition use of the referenced escrow account."

On June 30, 2011, the Debtor filed an "Accounting of TSP Funds Held in Escrow at Rockland Trust Company." The accounting revealed that funds in the sum of $19,655.45 were received from Attorney Shelton on December 10, 2010.

On July 12, 2011 the Debtor filed a motion to convert her Chapter 13 case to a case under Chapter 7, a Motion to Amend Schedules I & J, and amended Schedules I & J. By order dated July 13, 2011, the Court granted both motions and the Debtors' case was converted to a case under Chapter 7.

On August 9, 2011, the Chapter 7 Trustee, Lynne Riley, Esq. (the "Chapter 7 Trustee"), conducted the section 341 meeting of creditors at which LiBassi appeared. The Chapter 7 Trustee requested the Debtor pay over to her the non-exempt assets from the Rockland Trust Company bank account. According to the parties' agreed facts, Attorney Scannell delivered a check to the Chapter 7 Trustee in the amount of $7,837.45. Pursuant to a First Amended Account of TSP Funds Held at Rockland Trust Company filed on

10

October 5, 2011, the account balance is $11,582 which is comprised of $7,532, remaining after the payment to the Chapter 7 Trustee, and $4,050 disbursed by the Chapter 13 Trustee, representing a refund of Debtor's Chapter 13 plan payments.

As of October 27, 2011, the current amount in the Rockland Trust Company account entitled "William E. Scannell, Esq., Escrow Agent for Lillian O'Neal," including all interest is $11,793.92. According to the parties, this amount together with the funds in the possession of the Chapter 7 Trustee of $7,837.45 equals $19,631.37, while the original escrow amount from Attorney Shelton was $19,655.49.

## III. DISCUSSION

Although the parties requested an evidentiary hearing, they failed to set forth any disputed issues of fact. Moreover, they did not address the funds in the Debtor's FERS account and focused instead on the TSP Account. The Court finds that two facts are dispositive for purposes of determining the pending matters. The Debtor has substantial sums in her TSP Account, which she claimed as exempt, and sums that she borrowed from that account were, in effect, *in custodia legis* of the Probate Court at the commencement of her case. *See* Randall v. Haddad (In re Haddad), No. 10-19145-JNF, 2011 WL 4381872 (Bankr. D. Mass. Sept. 20, 2011).

### A. Funds in the Debtor's TSP Account

With respect to LiBassi's Objection to the Debtor's claimed exemption, the Court finds that the Debtor's TSP Account is not property of the estate. Therefore, his Objection to the claim of exemption is superfluous.

11


According to the court in In re Johnson, No. 09-16345-SSM, 2009 WL 3763709 (Bankr. E.D. Va. Nov. 6, 2009),

> "The Thrift Savings Plan is a tax-deferred retirement savings plan for Federal civilian employees established under the Federal Employees' Retirement Act of 1986, 5 U.S.C. §§ 8401 et seq." 246 B.R. at 252. It "offers Federal civilian employees the same type of savings and tax benefits that many private corporations offer their employees under so-called '401(k) plans." Id. For tax purposes, contributions to or distributions from the Thrift Savings Plan are treated in the same manner as contributions to or distributions from a 401(k) plan. § 5 U.S.C. § 8440.

2009 WL 3763709 at *2 n. 2 (citing In re Hasse, 246 B.R. 247 (Bankr. E.D. Va. 2000)). Property of a debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). There is an exception to that general rule, however, for property subject to "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 541(c)(2). The United States Supreme Court, in Patterson v. Shumate, 504 U.S. 753 (1992), held that funds held in retirement plans that are subject to the anti-alienation provisions of the Employee Retirement Income Security Act of 1974 ("ERISA") are within the purview of the § 541(c)(2) exclusion and cannot be administered by the trustee. Funds held in a federal Thrift Savings Plan likewise are statutorily protected against assignment or attachment, and are excluded from the bankruptcy estate. *See* In re Johnson, 2009 WL 37637009 at *2 (citing 5 U.S.C. § 8437(e)(2)).[3] *See also* Whetzal v. Alderson,

---

[3] Section 8437(e) of Title 5 provides:

(e)(1) Subject to subsection (d) and paragraphs (2) and (3), sums in the Thrift Savings Fund credited to the account of an employee, Member,

32, F.3d 1302(8th Cir. 1994) (holding that Civil Service Retirement System funds were not property of the estate); In re Jones, 206 B.R. 614, 621 (Bankr. D.C. 1997)(TSP account has split personality as it is property of the estate for purposes of federal tax claims even though it is not property of the estate for purposes of other creditors' claims). *But see* In re Enfield, 133 B.R. 515, 523 (Bankr. W.D. Mo. 1991) (a pre-Patterson v. Shumate case in which

---

former employee, or former Member may not be used for, or diverted to, purposes other than for the exclusive benefit of the employee, Member, former employee, or former Member or his beneficiaries under this subchapter.

(2) Except as provided in paragraph (3), sums in the Thrift Savings Fund may not be assigned or alienated and are not subject to execution, levy, attachment, garnishment, or other legal process. For the purposes of this paragraph, a loan made from such Fund to an employee or Member shall not be considered to be an assignment or alienation.

(3) Moneys due or payable from the Thrift Savings Fund to any individual and, in the case of an individual who is an employee or Member (or former employee or Member), the balance in the account of the employee or Member (or former employee or Member) shall be subject to legal process for the enforcement of the individual's legal obligations to provide child support or make alimony payments as provided in section 459 of the Social Security Act (42 U.S.C. 659) the enforcement of an order for restitution under section 3663A of title 18, forfeiture under section 8432(g)(5) of this title, or an obligation of the Executive Director to make a payment to another person under section 8467 of this title. For the purposes of this paragraph, an amount contributed for the benefit of an individual under section 8432(c)(1) (including any earnings attributable thereto) shall not be considered part of the balance in such individual's account unless such amount is nonforfeitable, as determined under applicable provisions of section 8432(g).

5 U.S.C. § 8437(e). In In re Johnson, the debtors withdrew funds from a TSP account prior to filing their bankruptcy petition. The court determined that the funds lost their exclusionary status and the debtors would have to exempt them under applicable state law.

13

the court held that TSP funds that were not exempt under Missouri law were property that was exempt under Federal law other than 11 U.S.C. § 522(d)).[4]

In In re Gill, No. 07-00358, 2007 WL 2990564 (Bankr. D.D.C. Oct. 11, 2007), the court determined that if a TSP account is property of the estate such that the debtor's ability to exempt the account becomes an issue, § 7701(j)(1)(A) of the Internal Revenue Code ("the Thrift Saving Fund shall be treated as a trust described in section 401(a) which is exempt from taxation under section 501(a)") supplied a basis for treating the TSP account as capable of being claimed as exempt. Id. at *1. The court observed, however, that the Federal Retirement Thrift Investment Board takes the position that a TSP account is not property of the estate due to 11 U.S.C. § 541(c)(2) and 5 U.S.C. § 8437(e)(2). Id. at *2 n. 2.

---

[4] In Enfield, the court observed the following:

Both CSRS and FERS are creatures of federal statute. *See* 5 U.S.C. Section 8331 to 8351 (1988); 5 U.S.C. Section 8401 to 8479 (1988). Statutory provisions provide anti-alienation protection for both systems. The relevant portions of both CSRS and FERS anti-alienation clauses provide that payments made under the systems are

> not assignable, either in law or equity, . . . or subject to execution levy, attachment, garnishment or other legal process, except as otherwise may be provided by Federal laws.

5 U.S.C. Section 8346(a) and 8470(a) (1988). These provisions clearly provide a "Federal law" exemption under Section 522(b)(2)(A) which will exempt both CSRS and FERS systems from the bankruptcy estate unless the phrase "except as otherwise may be provided by Federal laws" is meant to include the Bankruptcy Code and thereby withdraw the CSRS and FERS anti-alienation protection from a debtor in bankruptcy.

Enfield, 133 B.R. at 521-22.

Based upon the authority referenced above, the Court finds that any sums in the Debtor's TSP Account at the commencement of her case are not property of her bankruptcy estate. Even were the Court to conclude that the Debtor was required to claim those funds as exempt, she could amend her exemptions to claim the TSP Account as exempt pursuant to 11 U.S.C. § 522(b)(3)(C).

B. Escrowed Funds ($19,655.45)

A debtor's right to an exemption is determined as of the date of the bankruptcy petition. In re Dalip, 194 B.R. 597, 603 (Bankr. N.D. Ill. 1996); Howison v. Hidler (In re Hidler), 192 B.R. 790, 794 (Bankr. D. Me. 1996). Accordingly, the Court must determine whether the sums borrowed by the Debtor from her TSP Account were held in *custodia legis* of the Probate Court or were property of her bankruptcy estate which she could exempt at the commencement of her case.

The Probate Court's order of November 17, 2010, entered less than two weeks before the Debtor commenced her bankruptcy case, unequivocally provided that counsel to the Debtor, Attorney Naomi Shelton, was to notify LiBassi as soon as loan proceeds were transferred to her client funds account and that as an officer of the court she was not to disburse any funds received until further order of the Probate Court. The only exception was delivery of a client funds check, payable to the First Justice, for the full amount of the Debtor's loan from her TSP account. Attorney Shelton, in her letter to the Debtor's bankruptcy attorney, dated October 24, 2011, recognized that the funds were to be paid to the First Justice of the Probate Court, that the funds were to purge the Debtor's contempt

15

in exchange for further suspension of her 30-day jail sentence, and that the funds were to act as an appeal bond. The Probate Court proceeding has not been dismissed, although it has been stayed as a result of the bankruptcy case. *See* 11 U.S.C. § 362(a)(1) and (2).

The Debtor argues that no valid escrow was ever created. Omitting any reference to the first two parts of the Probate Court's November 17, 2010 order, namely the requirement that Attorney Shelton notify LiBassi and the prohibition against any disbursements without a court order, the Debtor maintains that because the loan proceeds were in Attorney Shelton's IOLTA account, there was no "escrow account." The Court disagrees. Attorney Shelton was charged with receiving funds from the Debtor's TSP Account and holding them until further order of the Probate Court. Her position was analogous to that of a receiver; she was not merely acting as counsel to the Debtor and holding the Debtor's money for the Debtor's benefit; she was holding them subject to express conditions. According to the court in Davis v. Mazzuchelli,

> "The possession of the receiver being considered the possession of the court, the property in his hands is looked upon as being in custodia legis, and, on that account, it is not to be taken upon any writ of attachment or execution while in his possession. In compliance with this rule it has been decided that the recovery of a judgment against partners after the appointment of a receiver for the benefit of creditors, does not create a lien upon any of the firm property or funds in his hands, and such property or funds cannot be levied upon by execution or reached by garnishment because it is already in custodia legis. So also the owner of a judgment lien upon land in the possession of a receiver cannot levy execution thereon, but must apply to the court in chancery which will protect his interests when making sale or distributing the proceeds of the land."

238 Mass. 550, 556 (1921) (citations omitted). *See also* In re Haddad, 2011 WL 4381872 at

16

*6.

The First Circuit, in Davis v. Cox, 356 F.3d 76 (1st Cir.2004), in the context of a divorce proceeding, analyzed the effect of a state-court order on funds in escrow accounts. It determined that, in addition to holding an individual retirement account subject to a constructive trust for the benefit of his spouse, an order of the probate court directing the placement of funds in escrow served to place those funds in *custodia legis*, thereby divesting the debtor of legal title to the funds. The First Circuit stated:

> The court here appointed the parties' attorneys to hold certain funds in escrow pending the division of the marital assets. The attorneys were appointed to safeguard the property to prevent Cox [the debtor] from continuing to dissipate the funds in violation of a court order. When the state court directed the attorneys to place the money in escrow accounts and to disburse the money only upon an order of the court, the funds were placed in *custodia legis* and Cox was divested of legal title of the funds and title passed to the attorneys as officers of the court.

Davis v. Cox, 356 F.3d at 93-94.  The Court of Appeals added:

> Cox contends that the escrow funds could not have been "effectively attached" as the bankruptcy court concluded because the majority of the funds were exempt from attachment under Maine law. As a result, Cox argues, the exempt property in the escrow funds passed unencumbered into the bankruptcy estate when he filed his petition. Cox's argument is flawed. While under Maine law certain property is exempt from attachment, 14 M.R.S.A. § 4422, the property at issue here was not attached. It is true that the bankruptcy court said the property was "effectively attached" when it was placed in *custodia legis*, but it was not *actually* attached. The bankruptcy court was merely analogizing property held in *custodia legis* for the benefit and protection of an individual to that individual's attaching of the property in a hypothetical situation to secure a debt. But unlike a mere attachment, the court's decision to place the property in *custodia legis* divested Cox of legal title and left him with only a contingent right to the property.

Id. at 94.

Based upon the foregoing, the conclusion is inescapable: the funds in Attorney Shelton's IOLTA account were in *custodia legis* at the commencement of the Debtor's case, despite the Debtor's assertions to the contrary. In addition, the Debtor only now asserts that the borrowed funds were not in escrow as she failed to respond to LiBasssi's Motion to Order Debtor to Deposit "Escrow Funds." Pursuant to that motion, which was filed while the Debtor's Chapter 13 case was pending, LiBassi requested the Court to 1) enter an order requiring the Debtor and/or her attorney to immediately transfer the remaining funds in escrow to the Chapter 13 Trustee until further order of the court; 2) order the Debtor to replenish the escrow funds to its original amount; 3) order the Debtor to continue making her monthly payments to the Chapter 13 Trustee from her monthly income; and 4) order the Debtor to turn over, presumably to the Chapter 13 Trustee, all financial records in her possession, custody and control concerning the escrow funds. In granting that motion, the Court also ordered the Debtor to provide an accounting of her postpetition use of the funds. Although the Debtor, through her counsel, filed an Accounting of TSP funds held in escrow at Rockland Trust Company, that accounting shows that the Debtor used some of the monies that she borrowed that were to serve as an appeal bond and to purge her contempt and that the Debtor did not comply with the orders of this Court requiring her to transfer funds to the Chapter 13 Trustee or to replenish the funds. Indeed, she used $4,286 for plan payments of which $4,050 was disbursed to her bankruptcy counsel by the Chapter 13 Trustee. Furthermore, without leave of court, her bankruptcy counsel turned over the sum of $7,837.45 to the Chapter 7 Trustee on August 9, 2011, apparently

unilaterally concluding that the Debtor's claimed exemption in $11,818.04 pursuant to 11 U.S.C. § 522(d)(5) was valid, despite the pendency of LiBassi's Objection and the Court's June 20, 2011 order.

Based upon the Court's conclusion that Attorney Shelton held $19,655.45 in *custodia legis*, and that the Debtor holds only a contingent interest in those funds, the Court shall enter an order granting LiBassi's Motion to Enforce Order of June 20, 2011 and Restore Escrow Funds.

### IV. CONCLUSION

In view of the foregoing, the Court shall enter orders overruling LiBassi's Objection to the Debtor's claimed exemptions in her TSP Account and in the "[f]unds held in escrow in the IOLTA account of Naomi L Shelton, Esq." as superfluous as those funds are not property of the Debtor's bankruptcy estate. The Court also shall enter an order requiring both counsel to the Debtor and the Chapter 7 Trustee to turnover the funds in their possession to the First Justice of the Probate Court.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: December 16, 2011

19